JOSEPH F. WILLEY and MARGARET C. WILLEY, his Wife, late MARGARET C. VINCENT, in Right of said Wife,

*vs.*

JAMES R. TINDAL, THOMAS CALHOON, CAROLINE G. STUART, Executrix, *et al.*

Sussex, March T. 1878.

*Guardian and ward ; protection of ward against acts of guardian.*

1. Any transactions between guardian and ward, or by the guardian alone, through which the guardian obtains a benefit, entered into while the relation exists, are in the highest degree suspicious. The presumption against them is so strong that it is hardly possible for them to be sustained.

2. This general doctrine of equity applies to the parties after the legal condition of guardianship has ended, and as long as dependence on one side and influence on the other presumptively in fact continue.

3. The influence of a guardian over his ward is presumed to last while the guardian's functions are to any extent still unperformed; while the property is still at all under his control, and until the accounts have been finally settled.

4. Where a guardian procures land in which his ward has an interest, to be sold by the orphans' court and to be purchased by a nominal bidder in the guardian's behalf, and a recognizance, which is a lien upon the land, is executed by such nominal purchaser, for the value of the ward's interest; and thereupon such purchaser conveys the land to the guardian in his own name; and soon thereafter the guardian enters satisfaction upon the record of the recognizance without having received any of the money due thereon, and charges himself with the amount so due, in his guardian bond,—such conduct of the guardian is a fraud in equity, and will not be allowed to prejudice the ward's rights.

5. In such a case the ward's lien upon the land, under the recognizance, so undertaken to be discharged by the guardian, is enforceable even after the ward has come of age, and as against a subsequent purchaser of the land having notice of the ward's claim of lien.

BILL TO ENFORCE A LIEN UPON LAND, IN FAVOR OF A WARD.—The facts are fully stated in the opinion.

*Jacob Moore* for the complainants.

*John R. McFee, Charles M. Cullen,* and *Caleb S. Layton* for the defendants.

THE CHANCELLOR.—It appears by the bill filed in this cause that Solomon E. Vincent, late of Sussex County, deceased, who died on the 24th day of February, 1854, intestate, was possessed in fee simple of certain tracts of land situate in said county, containing in the aggregate about 541 acres ; that the deceased left to survive him, as his only heirs at law, seven children, one of whom was Margaret C., who was then an infant of very tender years,—one of the complainants in this cause,—who afterwards intermarried with and became the wife of Joseph F. Willey ; that afterwards, under certain proceedings therefor had in the Orphans' Court of Sussex County, the lands of the deceased were sold by Thomas Calhoon, trustee appointed by said court for that

purpose; that at said sale, which was made on the 30th day of January, 1858, James Stuart became the purchaser of tract No. 1 for the sum of $2,000, and did afterwards enter into a recognizance in said court, with the said Thomas Calhoon and a certain George H. Vincent as his sureties, for the payment of $1,995.50 to the heirs at law of the said Solomon E. Vincent, deceased, with interest thereon from the 9th day of March, 1858,—said sale of tract No. 1 to him being confirmed, and the assignment of said tract of said lands having been made to him by the said court.

The bill charges that the sale of the said tract of land to the said James Stuart was a pretense and a fraud; that said Thomas Calhoon, trustee as aforesaid, was desirous of becoming the purchaser and owner of said tract, and did fraudulently combine and agree with the said James Stuart that he, the said Stuart, should bid for and purchase said tract for him, the said Calhoon; that at the time of said sale it was understood and agreed by and between the said Stuart and Calhoon that the said Stuart should buy said tract for him, the said Calhoon, and that after said sale should be confirmed by said court, said Stuart should convey the same to Calhoon; and that the said Stuart and wife did within two days after the confirmation of said sale, in the execution of said fraudulent agreement, and without any consideration,—to wit, on the 11th day of March, 1858,—convey said tract of land to said Calhoon.

Calhoon had been appointed guardian of the said Margaret C. on the 14th day of March, 1854, by the said orphans' court, and had entered into bond as such with Nathaniel Conaway and Cyrus Fleetwood as his sureties.

Nathaniel Conaway has since died insolvent; two thirds of the real estate of said Fleetwood, who is also dead, has been sold; and it is doubtful whether anything can be realized from the estate of said Fleetwood for the payment of the liabilities of the said Calhoon, as guardian of the said Margaret C.

It appears that Calhoon was also guardian of Harriet A.

and Joseph A., two other minor children of the said Solomon E. Vincent, who were equally interested with the said Margaret C. in the said recognizance entered into in said court by the said Stuart and his sureties, as aforesaid.

The bill also charges that, two days after the said conveyance from Stuart and wife to Calhoon,—to wit, on the 13th day of March, 1858,— Calhoon, as guardian of said three minor children, did fraudulently enter satisfaction on the record of said recognizance of and for the three several shares of his said three wards therein, no one having paid him anything on account of said three shares in said recognizance; and on the 9th day of February, 1859, satisfaction was entered on the remaining share in said recognizance.·

The bill charges that the entry of said satisfaction was a fraud on the rights of said minors, changing the security which had been given by the intestate laws of the State,— which was a lien, and which was beyond all doubt safe, —to the security of a guardian's bond,—which was no lien, and which at any time might become insecure; and that the whole transaction was carried out solely for the benefit of the guardian, and without any regard to the interests of the wards; that it was a fraudulent design consummated for the fraudulent purposes and advantage of the guardian.

Sundry judgments had from time to time been recovered in the superior court of said county against Calhoon, and his real estate was advertised for sale to satisfy them—or part of them—by the sheriff of said county; and Josiah P. Marvell, who was then sheriff, did on the 5th day of October, 1872, sell a part of said tract No. 1 to James R. Tindal, one of the defendants, for the sum of $1,500; and the bill alleges that the sheriff has that sum in hand ready to apply to liens to which it is properly applicable. It appears by the bill, and is proved, that at the sale of said land Joseph F. Willey, the husband of the said Margaret C., gave notice in writing to the persons there assembled, as follows:

"I hereby give notice that I shall institute proceedings

in equity to remove the entry of satisfaction made on the recognizance of James Stuart by Thomas Calhoon, as the guardian of my wife, which said recognizance was a lien on the lands which the sheriff is now about selling as the lands of Thomas Calhoon.                              Joseph F. Willey."

It is unnecessary to refer in detail to the answers and proofs in this cause. I am satisfied, from the bill, answers, exhibits, and proofs, that the statements contained in the bill, in so far as the same are necessary to be proved, are satisfactorily and fully proved.

Thomas Calhoon, the guardian of Margaret C. Vincent, now Margaret C. Willey, is insolvent; both of his sureties in his guardian bond are dead; and unless relief can be afforded her in this court I am satisfied that her share in her deceased father's estate will be entirely lost to her. I am determined, while I sit as chancellor in this court, that no dead man's estate shall be fraudulently appropriated, and that no dead man's children shall be robbed or defrauded of their just rights in their father's estate, if any power which I am judicially capable of exercising can avail in securing to them their rights.

Fortunately this court possesses ample power to relieve the complainant from the wrong and injustice attempted to be perpetrated towards her. The relation of guardian and ward is fiduciary in its character; the principle upon which that duty is based is no less extensive than that of doing to others as you would have others do unto you.

The relation is so intimate, the dependence so complete, the influence so great, that any transactions between the two parties, or by the guardian alone, through which the guardian obtains a benefit, entered into while the relation exists, are in the highest degree suspicious; the presumption against them is so strong that it is hardly possible for them to be sustained. This general doctrine of equity applies to the parties after the legal condition of guardianship has ended, and as long as the dependence on one side and influence on the other presumptively in fact continue.

This influence is presumed to last while the guardian's functions are to any extent still unperformed, while the property is still at all under his control, and until the accounts have been finally settled. A guardian shall not wrongfully acquire for his own use the property of his ward. He shall not mingle his own with his ward's funds. He shall not sell his ward's property to, nor buy such property from, himself. He shall make no profit for himself in dealing with his ward's funds; if he does make such profit, equity will compel him to account for the same to the ward.

When Thomas Calhoon became guardian of Margaret C. Vincent, she was entitled to an interest in her deceased father's lands, and in any recognizance entered into in respect to her interest in said lands.

The guardian did not become bound in any manner for the value of her interest in the lands, but only in respect to her personal estate and her interest in the rents of the land. The amount of the security required of him as her guardian was not estimated in respect to the value of her real estate. He procured that real estate to be sold, to be purchased by a nominal bidder for his own benefit. A recognizance was taken in which the value of her interest in the real estate was included; within a few days thereafter, as her guardian, he entered satisfaction upon the record of that recognizance for the amount of her interest therein without having received a dollar of the money due upon the recognizance to her, and charged himself with the amount so due in his guardian account. He converted the safe security in which she was so interested, and which was a lien upon a portion of the lands which formerly belonged to her father, into a worthless security which was a lien upon nothing. He acquired, or attempted to acquire, title to this land discharged from any lien which she had upon it. Such conduct in respect to her was a fraud in equity, and will not be allowed to prejudice her rights.

The share of said Margaret C. in said recognizance was a sum of $285.07, with interest thereon from March 9, 1858.

If she was now an infant, I should decree that that amount of money arising from the sale of her father's land, and which was so as aforesaid secured to her by said recognizance, should be paid by the sheriff into this court; but as she is now of age, I shall decree that the said sheriff shall pay over to her that amount of money, to wit, the sum of $535.55, out of the sum of $1,500, the proceeds of sale of said lands of Thomas Calhoon, first and before he applies any part of said proceeds to other and subsequent liens against the said Calhoon; and that Thomas Calhoon and James R. Tindal, who have contested in this court her claim, pay the costs of this suit in three months, or attachment.